**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| **v.** : | **Case No. 21-mj-303 (GMH)** |
| : | |
| **MARK K. PONDER,** : | |
| : | |
| **Defendant.** : | |

**GOVERNMENT'S MEMORANDUM**
**IN SUPPORT OF PRE-TRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant, Mark K. Ponder, be detained pending trial pursuant to 18 U.S.C. §§ 3142(f)(1)(A) [Crime of Violence] and 3142(f)(1)(E) [Dangerous Weapon]. The United States opposes release because, in view of the factors outlined in 18 U.S.C. § 3142(g), there are no conditions or combinations of conditions that can effectively ensure the safety of any other person and the community and reasonably assure the appearance of the defendant, pursuant to 18 U.S.C. § 3142(e). The government respectfully requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

**Factual Background**

**The Attack on the United States Capitol on January 6, 2021**

The United States Capitol is secured 24 hours a day by the U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized individuals with appropriate identification are allowed access

inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the U.S. Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the U.S. Capitol to certify the vote count of the Electoral College for the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Then-Vice President Michael Pence, who was also the President of the Senate, was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol Building, and U.S. Capitol Police ("USCP") were present and attempting to keep the crowd away from the U.S. Capitol Building and the proceedings underway inside. Officers from the Metropolitan Police Department of the District of Columbia ("MPD") also responded to the U.S. Capitol to assist USCP in protecting the Capitol.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the U.S. Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows

and by assaulting members of both USCP and MPD, as others in the crowd encouraged and assisted those acts.

At approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, and Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the U.S. Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During the course of the violent protests, many individuals were armed with weapons including bats, poles, pepper spray, sticks, zip ties, as well as bulletproof vests and anti-tear gas masks. Other individuals stole items from officers protecting the Capitol – including pepper spray and riot shields – and turned those items into makeshift weapons to be used against the officers. During the course of the violent protest, over 100 law enforcement officers reported being assaulted or injured by these violent protesters while attempting to protect the U.S. Capitol and the individuals inside of the building. These assaults occurred both inside the Capitol, as well as on the steps just outside the Capitol Building and throughout the grounds of the Capitol. The defendant, as detailed below, is charged with assaulting multiple federal officers with a dangerous weapon, civil disorder, obstruction of Congress, and other criminal violations for unlawfully entering the Capitol Grounds.

### Ponder's Violent Conduct and Officer Assaults on January 6, 2021

The west-facing portion of the Capitol building is a widely recognizable area of the Capitol and is located directly in the "front" of the building. It has both a lower and upper terrace, both of which face the Washington Monument. The Lower West Terrace is a very visible area of the Capitol Building that, in public perception, is often used for symbolic or patriotic events, such as

presidential inaugurations or the "Capitol Fourth" concert that is annually held on the Fourth of July. Indeed, on January 6, 2021, the Lower West Terrace was undergoing preparation for the inauguration of now-President Biden. Scaffolding had been erected for the media, and stairs, risers, and other flooring was in place to create the stage area upon which the inauguration would take place. In the center of the Lower West Terrace is an archway with a short set of stairs that leads to a set of double doors; those doors permit entrance directly into the Capitol Building.

At around 2:30 p.m. on January 6, 2021, a large group of MPD and USCP officers assembled to protect the Lower West Terrace entrance from an advancing mob. That specific area was the site of some of the heaviest violence that day, as the mob of rioters battled with police officers on-and-off from approximately 2:40 p.m. to 5:15 p.m. Over a period of about two-and-a-half hours, groups of rioters came in waves and gathered in the center of the terrace, in and around the archway and tunnel, as they attempted to violently breach the police line to gain entrance into the Capitol. On multiple occasions throughout that period, rioters overran the archway and physically battled with police officers inside the tunnel, directly at the Capitol entrance. At other times, officers were able to push the group of rioters out of the tunnel – away from the doors – and out onto the Lower West Terrace. Even when pushed out onto the terrace, many rioters continued to physically engage with officers there.

Mark Ponder was among the first group of rioters to take over the Lower West Terrace beginning at approximately 2:30 p.m. on January 6, 2021, where he contributed to the mob's efforts to overrun the officers stationed there. He used physical violence against officers who were protecting the Capitol, and his individual participation in the larger mob heightened the overall violence and dangerousness of the day. As detailed in the Complaint (*ECF No. 1*), which is incorporated herein by reference, Ponder is first captured on video at approximately 2:31 p.m.

running out from the crowd on the Lower West Terrace and striking at a uniformed officer with a long, thin pole. As the officer protects himself by holding a riot shield above his head, Ponder's pole strikes the shield and breaks in two, with part of the pole flying off to the side. Ponder then runs back into the crowd.

Approximately a minute later, at 2:32 p.m., Ponder is again captured on video, this time holding a new pole colored in red, white, and blue stripes. Ponder then runs toward a second uniformed officer while wielding the red-white-blue pole and strikes that officer as he guards the terrace. That second officer also shields himself from Ponder's attack with a riot shield and the pole strikes the shield instead of the officer. Ponder then runs back into the crowd a second time.

Almost fifteen minutes later, at 2:48 p.m., Ponder is captured on video again, this time on the Upper West Terrace, which is located directly above the Lower West Terrace. The Upper West Terrace is accessible from the Lower West Terrace by an exterior staircase. There, he forms part of a group of rioters confronting officers who are trying to clear the upper terrace. While other members of the mob verbally engage with the officers, Ponder aggressively wields the red-white-blue pole that he apparently had fifteen minutes earlier. As officers begin attempting to clear the terrace, Ponder alternatively runs toward, and then away from, the group of advancing officers. As he is running back and forth, he wildly swings the pole and begins striking at the officers, hitting at least one officer in the left shoulder.

At that point, officers on the terrace attempt to arrest Ponder, physically taking him to the ground and placing him in handcuffs. Due to the chaotic nature of the day, however, officers were unable to complete the arrest and ultimate released Ponder at approximately 3:15 p.m. Prior to his release, Ponder made numerous statements regarding the events of the day. Notably, as he was being escorted by police from the upper terrace, he repeatedly shouted "Hold the line!" and "Do

not give up!" to the crowd of rioters as he walked past. He also explained to the officers escorting him that "I will say this. When our country is being attacked with, like we are, we have a right to fight…that is what the Second Amendment was built on."

Despite being released and specifically told that he was not permitted to return, Ponder returned to the Capitol grounds later in the day. At approximately 5:06 p.m., Ponder was again caught on camera on the Inauguration Stage engaging with officers who were trying to clear the area of rioters.

For his conduct on January 6, 2021, Ponder is now charged by Complaint with: (1) Assaulting an Officer of the United States with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b); (2) Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); (3) Obstruction of Congress, in violation of 18 U.S.C. §§ 1512(c)(2) and 2; (4) Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority in violation of 18 U.S.C. § 1752(a)(1), and; (5) Disorderly Conduct and Physical Violence on the Capitol Grounds, in violation of 40 U.S.C. §§ 5104(e)(2)(D) and (F).

Following his arrest on March 17, 2021, Ponder spoke with the FBI at length regarding his involvement in the riot on January 6, 2021. In that interview, he admitted to being present on the U.S. Capitol grounds and to striking at least one officer with a red-white-blue pole, although he could not remember if he had struck other officers. He also discussed in depth the internal and external forces that led him to participate in the mob violence that day.

The Court conducted Ponder's initial appearance, at which the United States requested detention pursuant to 18 U.S.C. § 3142(f)(1)(A) and § 3142(f)(1)(E). A detention hearing is scheduled for March 22, 2021.

## ARGUMENT

The government respectfully requests that Ponder be detained pending trial because there is no condition or combination of conditions that will ensure the safety of the community if Ponder is released. There are four factors under § 3142(g) that the Court should consider and weigh in determining whether to detain a defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). The government submits that each of these factors weighs in favor of Ponder's detention.

### Nature and Circumstances of the Offenses Charged

Ponder's violent and enthusiastic participation in the mob's efforts to disrupt the Congressional proceedings and to overrun the Capitol building weighs heavily in favor of detention. During the course of the January 6, 2021, siege of the U.S. Capitol, over 100 law enforcement officers were assaulted by an enormous mob, which included numerous individuals with makeshift weapons such as poles, bulletproof vests, and pepper spray who targeted the officers protecting the Capitol.

Ponder was among the first group of rioters to take over the Lower West Terrace, where police officers spent approximately three hours that day attempting to control the crowd and to prevent groups of rioters from breaching the center door of the terrace. Officers spent much of that afternoon under physical attack by the violent crowd as many members of the mob attempted to break into the Capitol building. Those officers were in full uniform, with clear and visible markings identifying themselves as officers.

Ponder was first captured on video at approximately 2:31 p.m., running out from the crowd and striking an officer while wielding a long thin pole. When that pole broke, rendering it useless as a weapon, Ponder retreated and re-armed himself with another makeshift weapon. Two minutes later, Ponder ran out from the crowd a second time to strike a second officer with his new weapon, a patriotic red-white-blue pole that was much thicker and sturdier than his last weapon. Although Ponder does not appear on any known videos for the next fifteen minutes, he reappears at approximately 2:48 p.m. on the Upper West Terrace. During this incident, he strikes a third officer, once again using the red-white-blue pole.

After this third assault on officers, Ponder was briefly detained, but then released after officers learned that there was no transport vehicle available to complete the arrest. Despite being escorted from the Capitol grounds and told not to return, Ponder later returned again and was spotted after 5:00 p.m. on the Inauguration Stage.

Ponder's assaults against police officers on Capitol grounds were violent, dangerous to the individual officers struck by Ponder, and dangerous to other officers and civilians who were in the general vicinity of Ponder as he wielded his weapons. His actions also heightened the overall dangerousness of the day by creating havoc and by increasing the collective violence of the mob. Not only did Ponder assault three different officers, but he armed himself twice to carry out his attacks. When his first weapon failed, he momentarily retreated before returning with a thicker pole that presented an even graver danger if used to strike a human being, which is precisely what Ponder used it for. His assaults were also highly-public and in blatant defiance of lawful orders. Ponder carried out his assaults in full view of numerous law enforcement officers who were attempting to control the crowd.

Ponder's violence against police officers protecting a lawful proceeding of Congress, for which he is charged with multiple felonies – including a crime of violence – weighs heavily in favor of detention. Not only was his individual conduct violent and dangerous, but his actions heightened the overall violence and dangerousness of the day. As stated by Chief Judge Beryl A. Howell, "[t]he actions of this violent mob, particularly those members who breached police lines and gained entry to the Capitol, are reprehensible as offenses against morality, civic virtue, and the rule of law." *See United States v. Chestman*, 21-mj-218 (BAH), ECF No. 23, at *13, 16 (D.D.C. Feb. 26, 2021) ("Grave concerns are implicated if a defendant actively threatened or confronted federal officials or law enforcement, or otherwise promoted or celebrated efforts to disrupt the certification"). Here, the defendant's repeated violence against multiple officers while wielding two different weapons weighs in favor of detention.

### **Weight of the Evidence against the Defendant**

The second factor to be considered, the weight of the evidence, also weighs in favor of detention. The evidence against Ponder is particularly strong; not only is his conduct captured on videotape, but he also admitted to his participation in the riot that day. Significantly, Ponder was captured on multiple BWC and open-source videos that clearly show him striking multiple officers who were defending the Capitol on January 6, 2021. Ponder's face is visible in several of those videos, as is the green jacket and beige sweater with three horizontal stripes that he wore during the Capitol riot. Notably, during a search of Ponder's residence on March 17, 2021, law enforcement recovered a beige sweater consistent with the sweater that Ponder appears to be wearing in the videos. Furthermore, Ponder was identified on January 6, 2021, by officers who interacted with him face-to-face and were attempting to arrest him and to remove him from the Capitol grounds. Ponder himself also confirmed his identity on January 6, 2021, by providing the

officers with his date of birth and by repeatedly responding to the name "Mr. Ponder" without objection.

In addition, defendant Ponder admitted to being present on the Capitol grounds on January 6, 2021, and to engaging in assaultive conduct. Following his arrest on March 17, 2021, Ponder participated in a videotaped interview with the FBI in which he discussed his participation in the riot at length. Ponder described how "emotions were high" the day of the riot and how he believed "the election was stolen." He described feeling that "stuff had been piling up for so long" that, eventually "at some point it just broke."

He admitted to marching with a crowd toward the Capitol Building on January 6, 2021, and initially being stopped by officers would not permit the crowd to go beyond a barricade to the Capitol. Ponder also admitted to striking at least one officer on the Capitol grounds while he swung a red-white-blue pole, although he could not remember whether he had struck more than one officer.

Although Ponder insisted that his assaults on officers that day were not "personal" because he generally "stands with" officers, he appeared to believe that his actions were justified because the officers were a "part of the problem" that day. He explained,

> I know that I had an incident with them, but I'm trying to get the police to understand, I'm for you. At some point in time, the way this country is going, you gonna have to pick a side, where you stand at. I'm an American and I'm proud of that. And the way things are going right now, with the stuff that is going on in the street everyday; business are closing up; people are out here fighting for their livelihoods…that day, when I got into it with them, I was angry because I felt as though he [the police] …was out here being a part of that problem. The police were being a part of the problem.

When asked about his "standoff" with officers on the Capitol grounds, Ponder described how he was unwilling to back down at that point, saying:

> With that incident, at that point in time a lot led up before that incident; a lot of things had happened. At that point in time with that standoff with him, it was like I'm already in the fight now. I'm already in the fight, you know. And so, let's get this straight, it was nothing personal against him or against the police period. But, at that point in time I'm in the fight you understand. And, I've come this far, I can't quit now. Like I said, I'm an American, I come this far I can't quit now.

Nevertheless, he did express regret for assaulting an officer, offering both an apology and expressing concern that the officer may have been hurt.

Ponder also expressed that "a lot" had lead up to his actions at the Capitol, including his frustration that neither the court system nor law enforcement had stepped in to ensure that there had been an investigation into the election. He indicated that his actions at the Capitol were in response to what he perceived as the American people being "robbed." In his own words he explained,

> If we going to get down into the election, okay, that's part of it. Okay. Cause the election, I know I shouldn't say it, but I really feel as though it was stolen. And now, being like you, we Americans here and as Americans we can lose, that's okay. If we put forth our best, and we fight, we lose, okay. But you cannot stand if someone is going to take it from you. If you are going to get robbed. And you go to work everyday and you go outside and somebody robs you. That's something you can't take, right?...And that's how I feel about this election. The evidence of…the thing about it is, our Supreme Court, we have a Supreme Court here that is supposed to stand for stuff like this. And say okay. Why hasn't the Supreme Court stepped in? Why didn't Barr step in, at the very least, at the minimum to say 'let's have an investigation.' The allegations, there are too many allegations, there is too much going on for us to say something is not happening…why not at least at the minimum have an investigation to look into it?

During the interview, Ponder explained that he had not planned to enter the Capitol on January 6, 2021, and indicated that he never entered the inside of the building. He also provided additional details regarding the internal and external factors that motivated him to participate in the mob violence on that day. Given the strength of the government's evidence – including video

recordings of Ponder's violent conduct coupled with his admissions – this factor weights in favor of detention.

### Defendant's History and Characteristics

The United States submits that Ponder's history and characteristics, particularly his criminal history – which includes convictions spanning the last four decades – coupled with his recent his violent response to social and political concerns, also weighs in favor of detention.

Significantly, the January 6, 2021 riot was not the first time that defendant Ponder engaged in violence to further his own purposes.  In 2008, Ponder was convicted in case 07-CR-236 of Bank Robbery and Robbery, for which he served 37 months of incarceration.  In that case, Ponder pled guilty to offenses in two separate incidents.  He admitted guilt to entering a PNC Bank on July 9, 2007, demanding money and walking out with currency totaling $2,469.  He also admitted guilt for a second incident that took place a week later, this one on July 15, 2007, in which he robbed a taxi driver of his taxi after forcing the driver and a passenger out of the vehicle.  After completing his term of supervised release in 2013, the matter was closed by the U.S. Probation and Parole Office.

Prior to that conviction, Ponder was convicted of Domestic Assault in 2004 in case 2003-DVM-3614.  In 1990 and 1991, he was also convicted of Attempted Possession of Cocaine in case 1991-CMD-5109, and Attempted Possession with Intent to Distribute Cocaine in case 1990-FEL-7751.  Finally, his record reflects that he was convicted of Attempted Burglary and CDW (Felony) dating back to 1984 in cases 1984-FEL-6175 and 1984-FEL-1047.  Defendant Ponder's criminal history – which now spans four decades and includes both violent crimes as well as narcotics possession – demonstrates that he has had a long-term disregard for authority and is unwilling to

conform his actions to the law, despite multiple opportunities to reform. This factor weighs heavily in favor of detention.

Furthermore, Ponder's willingness to resort to violence on January 6, 2021 to address social and political grievances elevates his potential dangerousness. Ponder readily admitted that his violent actions in the Capitol riot were animated by his deeply-held concerns about the state of the country and the election. Rather than pursue lawful means to address those concerns, however, Ponder chose lawlessness. At a moment when "emotions were high" Ponder was willing to abandon the lawful methods of social change in favor of violence and to attack the very officers he claimed to support. This emotion-laden choice to engage in lawlessness presents a continued danger to the community and weighs in favor of detention.

### Danger to the Community

The fourth factor, the nature and seriousness of the danger to any person or the community posed by a defendant's release, also weighs in favor of Ponder's detention. Ponder's dangerousness is illustrated by his highly-public assault of officers at the U.S. Capitol Building, in conjunction with his prior convictions for violence, including Bank Robbery, Robbery, and Domestic Assault. As described by Chief Judge Beryl A. Howell when addressing another defendant's danger to the community, there is a concern that "if the opportunity presented itself again" and "there was another call to arms by a political figure he likes, that he might not again participate in political violence." *See United States v. Sibick*, 21-mj-297 (BAH), ECF No. 13, at *50 (D.D.C. March 16, 2021). Ponder's history, his actions on January 6, 2021, and his continued belief in the need to "pick a side" in what he sees as an existential fight for the future of the country demonstrate a similar and ongoing threat to the safety of our community that weighs in favor of pretrial detention.

Given the above assessment of all four relevant factors, there is clear and convincing evidence that there are no conditions or combinations of conditions which can effectively ensure the safety of any other person and the community and reasonably assure the appearance of the defendant, pursuant to 18 U.S.C. § 3142(e).

## CONCLUSION

WHEREFORE, the United States respectfully requests that the Court grant the government's oral motion to detain the defendant pending trial.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793


By: */s/ Jocelyn Bond*
JOCELYN BOND
Assistant United States Attorney
D.C. Bar Number 1008904
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 809-0793
Jocelyn.Bond@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2021, I caused a copy of the foregoing detention memorandum to be served on counsel of record via electronic filing.

                                                        */s/ Jocelyn Bond*
                                                        JOCELYN BOND
                                                        Assistant United States Attorney